**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **KELLY L. ASHTON, Individually and** | § | |
| **as the Independent Executor of the Estate** | § | |
| **of Donald Ray Ashton, Deceased,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **C.A. No. 3-09-cv-0759-B** |
| | § | |
| **KNIGHT TRANSPORTATION, INC.** | § | |
| **and GEORGE M. MUTHEE** | § | |
| | § | |
| **Defendants.** | § | |

### DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS FOR SPOLIATION OR FOR ADVERSE INFERENCE AND BRIEF IN SUPPORT

Defendants, KNIGHT TRANSPORTATION, INC. ("Knight") and GEORGE M. MUTHEE ("Muthee") appear by and through their attorneys of record, Michael P. Sharp, Daniel M. Karp and Rebecca E. Bell, and pursuant to this Court's request for Responsive Briefing, file this Response to Plaintiff's Motion for Sanctions and Brief in Support:

### I.    PLAINTIFF'S REQUEST FOR SANCTIONS IGNORES RELEVANT EVENTS

From the outset of her Motion, Plaintiff attempts to craft grounds for the requested relief from misstatements, assumptions, and misinterpretations both of the law and of the facts in this case. Therefore, a clear timeline and chronology of the events, overlain with the facts at the time of such events, is helpful in separating the allegations from the evidence:

> ➤ August 11,2007    Accident Occurs between Jacob Valek and the Ashton vehicle. Multiple vehicles, including a Knight Transportation tractor/trailer, drive through the debris field.

> ➤ August 13, 2007    Front two steer tires replaced in Sparks, Nevada.

> ➤ August 17, 2007    Knight first learns of accident from Kansas Highway Patrol

---

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS**
**AND BRIEF IN SUPPORT**                                    P a g e | **1**

➢ August 25, 2007    Knight Transportation requests Steve McKinzie to come inspect the tractor where it was located in California.

➢ August 26, 2007    Kansas Highway Patrol communicates via phone and electronic communication with Steve McKinzie prior to, during, and after the McKinzie inspection.

➢ August 27, 2007    McKinzie contacts Kansas Highway Patrol regarding whether Kansas officials will be traveling to California for an independent examination of the truck, and indicates his understanding that the driver would be made available for interview at that time

➢ August 27, 2007    Kansas Highway Patrol requests documents from Federal Motor Carrier Safety Administration.

➢ August 28, 2007    Federal Motor Carrier Safety Administration requests documents from Knight Transportation

➢ August 28, 2007    Kansas Highway Patrol internally discusses that the truck is in California and is available for inspection, and further that the trailer at issue is being held for inspection in Idaho.

➢ August 29, 2007    Kansas counsel for Knight Transportation (Lee Baty) contacts Kansas Highway Patrol regarding information requested – specifically, informs Kansas Highway Patrol that the tires were disposed prior to Knight learning of accident. Knight Transportation provides the tire invoice to the Kansas Highway Patrol.

➢ September 7, 2007    Knight Transportation complies with request from FMCSA providing information and documents as requested regarding the tractor and trailer (*in response to e-mail 10 days earlier*)

➢ September 28, 2007    Kansas Highway Patrol communicates with McKinzie explaining that the agency is still working to have truck examined by San Bernardino Crime Lab on behalf of Kansas Highway Patrol.

➢ November 27,2007    Kansas Highway Patrol communicates with Ontario Police Department regarding assistance with inspection of tractor maintained at Knight Transportation yard in California (specifically referencing all photos turned over by McKinzie to Kansas Highway Patrol)

➢ November 28, 2007    Kansas counsel for Knight Transportation sends communication to Kansas Highway Patrol clarifying that the relevant truck was released the first time San Bernardino requested it, but same had not been picked up based on the crime lab's schedule. This communication

---

> further states that there no objection by Knight Transportation to drive the vehicle away from the yard to the crime lab.

➤ December 5, 2007     Tractor picked up from the Knight Transportation yard and driven to the San Bernardino crime lab.

➤ December 19, 2007     Tractor returned to Knight Transportation from the San Bernardino Crime Lab.

➤ January 2, 2008     Kansas Highway Patrol authorized Knight Transportation to release the tractor for repairs and to be put back on the road.

➤ March 2009     Kelly Ashton, Individually and as Executor of the Estate of Donald Ashton files suit against Knight Transportation and George Muthee

The above chronology is important not only to clearly set forth the events at issue, but further in understanding the appropriate standard to apply in assessing whether sanctions are appropriate.

## II.     PLAINTIFF'S REQUEST FOR SANCTIONS IGNORES RELEVANT LAW

As noted by Plaintiff's Motion for Sanctions, federal law generally governs spoliation issues, even in a diversity case.[1] *See* PLAINTIFF'S MOTION FOR SANCTIONS p. 9. Indeed, the parties generally agree as to the language commonly utilized in discussing sanctions under Federal Rules of Civil Procedure 37 and the spoliation doctrine. "Spoliation" is "the destruction of evidence * * *. The significant and meaningful alteration of a document or instrument.'"[2] Plaintiff's Motion on its face accepts that spoliation is the destruction or the significant and meaningful alteration of evidence when a party has a duty to preserve it.[3] *See* PLAINTIFF'S MOTION FOR SANCTIONS p. 9. Plaintiff also acknowledges that in addition to the nature of the act

---

[1]     *See Condrey v. SunTrust Bank of Ga.*, 431 F.3d 191, 203 (5th Cir. 2005); *King v. Illinois Central R.R.*, 337 F.3d 550, 555-56 (5th Cir. 2003).

[2]     *Andrade Garcia v. Columbia Med. Ctr.*, 996 F. Supp. 605, 615 (E.D. Tex. 1998) (citations omitted).

[3]     *See Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 612 (S.D. Tex. 2010) ("Spoliation is the destruction or significant and meaningful alteration of evidence.").

---

or omission in question occurring in defiance of a recognized duty, Plaintiff must also establish a *mens rea* on the part of the alleged culpable party that supports bad faith and intentional destructive conduct.[4] *See* PLAINTIFF'S MOTION FOR SANCTIONS p. 9-10.

### A.    Spoliation Requisite: Duty to Preserve.

Plaintiff accurately notes the general standard: "If a party with a duty to preserve evidence fails to do so and acts with culpability, a court may impose appropriate sanctions."[5] *See* PLAINTIFF'S MOTION FOR SANCTIONS p. 9. It bears noting that the acts complained of in Plaintiff's Motion for Sanctions as it relates to the spoliation doctrine arose prior to the litigation in question. Indeed, some of the acts complained of occurred prior to obtaining knowledge of the alleged involvement of the Knight Transportation vehicle as it traveled through the accident debris, which will be discussed in greater detail below. Thus, the chronology outlined in the opening pages of this Response and Brief in Support is significant in determining the appropriate standard this Court should apply in assessing Plaintiff's request for Sanctions under the Spoliation Doctrine. Any deletions, alterations, or losses generally cannot be spoliation unless there is a duty to preserve the information, a culpable breach of that duty, and resulting prejudice.[6]

"These general rules are not controversial. But applying them to determine when a duty to preserve arises in a particular case and the extent of that duty requires careful analysis of the

---

[4]    *See King*, 337 F.3d at 556 (stating that a party seeking sanctions must show the "bad conduct" or the "bad faith" of the destroying party); *Super Future Equities, Inc. v. Wells Fargo Bank Minnesota, N.A.*, No. 3:06-CV-0271-B, 2008 WL 3261095, *12 (N.D. Tex. Aug. 8, 2008) (identifying "bad conduct" or "bad faith" as spoliation's predicate) (citing *Condrey v. SunTrust Bank of Georgia*, 431 F.3d 191, 203 (5th Cir. 2005)); *GW Equity LLC v. Xcentric Ventures LLC*, No. 3:07-CV-976-O, 2009 WL 62168, *8 (N.D. Tex. Jan. 9, 2009) (same as *Super Futures*).

[5]    *Smith v. American Founders Financial Corp.*, 365 B.R. 647, 681 (S.D. Tex. 2007).

[6]    *Rimkus Consulting Group, Inc.*, 688 F. Supp. 2d 598.

---

specific facts and circumstances."[7]  Plaintiff's Motion asserts that the "duty to preserve" was triggered at the moment Muthee drove through the accident debris.  This opinion, however, ignores the sequence of events that ultimately occurred in the investigation by both Knight Transportation and the Kansas Highway Patrol. The *Rimkus* court relied upon throughout Plaintiffs' Motion for Sanctions noted that it can be difficult to draw bright-line distinctions between acceptable and unacceptable conduct in preserving information and in conducting discovery, either prospectively or with the benefit (and distortion) of hindsight.[8]  "Whether preservation or discovery conduct is acceptable in a case depends on what is reasonable, and that in turn depends on whether what was done--or not done--was proportional to that case and consistent with clearly established applicable standards."[9]  Importantly, this analysis depends heavily on the facts and circumstances of each case and cannot be reduced to a generalized checklist of what is acceptable or unacceptable.

### B.    Spoliation Requisite: The Destruction or Significant and Meaningful Alteration of Evidence.

The burden is on the Plaintiff to establish that Defendants destroyed material evidence or that Defendants intentionally committed acts that significantly and meaningfully altered evidence such that Plaintiff is deprived of material evidence in establishing a critical aspect of the case.[10]  Plaintiff's Motion asserts two types of "destruction:" (1) Muthee's continued driving deprived the Kansas Highway Patrol from an opportunity to inspect the tractor-trailer; and (2) alterations to the vehicle.  The alterations alleged consist of the change of steer tires and the partial scraping

---

[7]    *Id.* at 613.

[8]    *Id.*

[9]    *Id.*
[10]    *Id.* at 615.

---

of a substance that was later tested and determined to be material not associated with the accident.[11]

It bears noting that Plaintiff's Motion attempts to craft her impression of an obstruction of police investigation as the intentional spoliation of evidence to avoid civil liability.  This Court should not be swayed by Plaintiff's request to penalize Defendants in the context of this civil suit for Plaintiff's perception of the manner in which Knight Transportation cooperated with the Kansas Highway Patrol in its investigation.  Trooper Ballinger refused to make the same assumptions that Plaintiff asserts with regard to Plaintiff's opinion that Steve McKinzie materially altered the equipment or tampered with evidence during the course of McKinzie's inspection.  Significantly, Plaintiff cannot point this court to any specific destruction or material alteration such that Plaintiff's case is affected, ***particularly in light of Defendants' decision not to dispute whether the Knight Transportation vehicle operated by Muthee on the date in question came into contact with Don Ashton***.  Plaintiff bears the burden of establishing through affirmative evidence that material evidence was actually destroyed or so materially altered that Plaintiff is deprived of evidence critical to the prosecution of her suit.[12] Failure to carry this burden is conclusive as to whether the severe sanctions requested by Plaintiff should be denied.

### C.    Spoliation Requisite: Bad Faith.

The spoliation doctrine stretches farther than the loss of possible evidence.  Destruction or deletion of information subject to a preservation obligation is not sufficient for assessing the requested sanctions. Bad faith and prejudice is required.[13]  The test is not one of mere negligence

---

[11]    This will be discussed in greater detail below in analyzing the evidence at issue.

[12]    *See Ford v. Potter*, 354 Fed. Appx.  28; 2009 U.S. App. LEXIS 24781 (5th Circ. 2009) (summary calendar).

[13]    *Condrey*, 431 F.3d at 203; *see also Whitt v. Stephens County*, 529 F.3d 278, 284 (5th Cir. 2008).

in the maintenance of the alleged evidence, nor even one of gross negligence in the preservation of evidence, but the intentional decision to deprive Plaintiff of material evidence. [14]   Although Plaintiff's Motion certainly casts a story that is lined with bad intention, the evidence itself denounces the bad faith that is required in order to justify sanctions or a negative inference.

Plaintiff concedes that sanctions for spoliation must be based on a party's bad faith or bad conduct, and the court should consider not only the culpability of the alleged destroying party but also the prejudice to the aggrieved party.  *See* PLAINTIFFS' MOTION FOR SANCTIONS, p. 4.  It is important to note that the Motion focuses primarily on alleged acts or omissions by the Defendants prior to the litigation in this cause as support for the severe sanctions requested.  The acts complained of in the Motion as to the discovery in this suit involves the ultimate timing of documents being produced (not altered or destroyed), and ultimately such complaints occurred greater than one hundred days before the recent trial setting, which will be discussed in greater detail below.  There is no allegation that Defendants violated a court order to preserve evidence, began to manipulate evidence after suit was filed, or even that the process by which Knight Transportation participated in the investigation of the Kansas Highway Patrol prior to litigation was done with an intention to hide material proof, nor is there evidence that the alleged effect on the Kansas Highway Patrol investigation actually operates as prejudice as to the current civil litigation.[15]   It is not sufficient to argue that Knight Transportation's involvement with Kansas Highway Patrol "smells bad" and therefore should be inferred as bad conduct and bad faith in the

---

[14]    *Condrey*, 431 F.3d at 203; *Vick v. Texas Employment Commission*, 514 F.2d 734, 737 (5th Cir. 1975).

[15]    *See Rimkus,* 688 F. Supp 2d at 613; compare with *Tandy Crafts, Inc. v. Bublitz*, 2002 U.S. District LEXIS 3353 (N.D. Tex. Feb. 27, 2002).

manner that prejudices the Plaintiff in this civil litigation.[16] The burden is on the Plaintiff to demonstrate that specific sanctions are just and tailored to the alleged action, and further that she establishes the scope of bad intention that would warrant the severe sanctions discussed in the context of the spoliation doctrine.

> **D.      Plaintiffs' Request for Sanctions Based upon "Tampering of Evidence" During Police Investigation Should be Denied.**

Plaintiff's Motion begins and ends its argument with the belief that sanctions are appropriate based upon a "stymied" investigation that affected the progress of the Kansas Highway Patrol. In light of the heavy reliance by Plaintiff on the post-accident events (as compared to the cause of the alleged damages) and the significant reliance placed by Plaintiff on Trooper Kip Ballinger in asserting that this court should punish the Defendants during the course of this civil lawsuit, it is necessary to review such evidence and the inferences Plaintiff asks this court to draw from the events of the investigation.  Attached to Plaintiff's motion are 51 pages reflecting a portion of electronic communications involving Trooper Ballinger during his investigation. *See* PLAINTIFFS' MOTION FOR SANCTIONS, Tab 1. These electronic communications, however, should be placed in the context of the investigation itself, the chronology of events, and the clarifications offered by Trooper Ballinger during the course of his deposition.

Of initial importance, the police investigation was <u>not</u> affected as it related to the cause of the collision between the Valek vehicle and the vehicle occupied by Don Ashton. The Kansas Highway Patrol investigation determined that Jacob Valek, while operating his vehicle at approximately 80 mph failed to yield the right-of-way and ran a STOP sign, thus causing the

---

[16]      *See Ford*, 2009 U.S. App. LEXIS 24781.

devastating collision.[17]   The negligence of Valek, according to the police investigation, resulted in the Hummer moving onto the grassy median between the north and southbound lanes, causing the trailer to separate from the Hummer.[18]   The Hummer then overturned, crossing the northbound lanes and came to rest on its top on the east shoulder.[19]   Critically, Trooper Ballinger testified that the traffic crash reconstruction performed by the Kansas Highway Patrol determined that Don Ashton was ejected from the vehicle and came to rest in the northbound driving lane of U.S. 81.[20]   The result of this reconstruction regarding the cause of the collision has never been revised, amended, or changed.

Plaintiff, however, asserts that the Kansas Highway Patrol was deprived of the opportunity to conduct the same type of inspection on the Knight Transportation vehicle that it was permitted to conduct on the Billy Chick tractor/trailer regarding the passage of the vehicle through the debris field created by the Valek collision.[21]   Plaintiff omits that the Kansas Highway Patrol did not conduct any type of scientific testing or analysis of Billy Chick's tractor/trailer to establish or rule out that he may have struck Don Ashton's body.[22]   Ballinger actually testified he conducted a visual inspection only, without any swab samples, luminal testing, or lab testing for serological evidence.[23]   There is no testimony from Trooper Ballinger that his investigation into

---

[17]     *See* BALLINGER DEPOSITION, p. 24-32.

[18]     *See* BALLINGER DEPOSITION, p. 39-40.

[19]     *Id.*

[20]     *See* BALLINGER DEPOSITION, p. 47-50; *See* KANSAS ACCIDENT REPORT attached as a portion of the Appendix to DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS.

[21]     *See* BILLY CHICK STATEMENT attached as a portion of the Appendix to DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS.

[22]     *See* BALLINGER DEPOSITION, p. 70-71.

[23]     *Id.*

the cause of death of Don Ashton was materially affected by the inability to inspect the Knight Transportation vehicle immediately after driving through the debris field.   There is no explanation as to why the vehicle would reveal medical evidence regarding whether Ashton was already dead when the Knight Transportation vehicle went through the accident scene, whether he was thrown from the Hummer, or whether he suffered injuries that he would not be able to recover from as a result of the violent impact with the Valek vehicle.   Indeed, there is no reasonable explanation for imposing an inference regarding Muthee proceeding through the scene without stopping or later changing the worn steer tires, especially since such evidence would at best support that Muthee struck Ashton's body, a fact that Defendants will not dispute at trial.

Plaintiff also asserts that this Court should punish the Defendants based upon the involvement of Steve McKinzie and his inspection of the Knight Transportation vehicle *which occurred with the full knowledge of the Kansas Highway Patrol*.   It is important to note that Trooper Ballinger is not willing to take the leaps of logic proposed by Plaintiff during the course of his deposition in regards to McKinzie's involvement or inspection.   Although Plaintiff spent a great deal of time attempting to convince Trooper Ballinger that Steve McKinzie had committed an illegal act that directly affected the police investigation, Trooper Ballinger ultimately testified that McKinzie was in communication with Ballinger prior to, during, and subsequent to the inspection, and refused to assume that McKinzie had materially altered or destroyed evidence by taking swab samples.[24]   Additionally, despite Plaintiff's heavy-handed description of McKinzie somehow deceitfully inspecting the vehicle behind the Highway Patrol's back, Ballinger testified that he was offered the opportunity to personally inspect the vehicle but that the Kansas Highway

---

[24]      *See* BALLINGER DEPOSITION, p. 113-117.

Patrol did not possess the funds to physically travel to personally inspect the tractor/trailer at that time.[25] The evidence goes further and demonstrates that Knight Transportation not only offered the equipment for inspection, but also made offers regarding travel costs if necessary.[26]

A significant portion of Plaintiff's motion involves a series of red-herrings as it relates to the application of the spoliation doctrine. For example, Plaintiff alleges that Defendants should be sanctioned by this court because the Kansas Highway Patrol secured a warrant to have the tractor removed from the Knight Transportation yard and taken to the San Bernardino crime lab. *See* PLAINTIFFS' MOTION FOR SANCTIONS, p. 1; 31. However, Ballinger testified that he secured such warrant out of an abundance of caution to ensure proper transport to the crime lab; he actually testified that Knight Transportation was cooperative in offering the vehicle for inspection from the time it was located up through the final arrangements.[27] Plaintiff also asks this court to sanction the Defendants regarding missing documentation in the production of Muthee's employment file to the Kansas Highway Patrol. However, Plaintiffs utterly ignore that this employment file has been produced during the course of discovery in this suit. There is absolutely no reason why this Court should sanction Defendants in this civil lawsuit for the process by which documentation was provided directly to the Federal Motor Carrier Safety Administration (who is working in cooperation with the Kansas Highway Patrol) as a punishment for documents that were not destroyed, but indeed were provided to Plaintiff during the course of appropriate discovery. Additionally, Trooper Ballinger testified that he has not requested the results of any of the swab samples or testing from Knight Transportation or Steve

---

[25]    *See* BALLINGER DEPOSITION, 117-18.

[26]    *See* SANT DEPOSITION EXCERPTS attached as a portion of the Appendix to DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS.

[27]    *See* BALLINGER DEPOSITION, p. 121-125.

McKinzie.[28] Plaintiff wishes to ignore the context of the police investigation and the alleged effect on this civil litigation (if any) in her pursuit of a spoliation sanction. Furthermore, Plaintiff utterly ignores that Defendants will not dispute at the time of trial that Muthee did, indeed, come in contact with Don Ashton in the roadway. Plaintiff's reliance on Knight Transportation's involvement with the Kansas Highway Patrol not only misconstrues the actual events, but also the police impression of such events and ultimate conclusions. Most importantly in the context of the requested sanctions, Plaintiff does not carry her burden of proof in demonstrating that the interactions with the Kansas Highway Patrol pre-litigation has now deprived Plaintiff of her day in court through suppression or destruction of material evidence.

## III.     PLAINTIFF'S REQUEST FOR SANCTIONS ARISING UNDER THE SPOLIATION DOCTRINE IGNORES RELEVANT EVIDENCE

Plaintiff's Motion relies heavily on electronic communications to and from the Kansas Highway Patrol and the deposition testimony of Trooper Kip Ballinger in an effort to establish an impression that Defendants actively obstructed a police investigation, and therefore by extension, Plaintiff's case. *See* PLAINTIFF'S MOTION FOR SANCTIONS p. 6-8; 11; 22-23; 25. Plaintiff needs this Court to assume immediate knowledge that Muthee struck Don Ashton and that each act post-incident was designed to intentionally alter or destroy material evidence. Not only are these assumptions incorrect under the evidence, but same are further ***immaterial*** in light of the narrow matters that remain in dispute. The inquiry does not end at Plaintiff's assertion that additional evidence could potentially be available, or even at what a favorable assumption pertaining to such evidence would reveal; this Court must determine the effect of such presumed evidence on the material issues in dispute.[29]

---

[28]     *See* BALLINGER DEPO, p. 148-49.

[29]     *Rimkus Consulting Group, Inc.*, 688 F. Supp. 2d 598.

A.    **Plaintiff's Request for Sanctions Based upon Presumed Effect of Evidence on Police Investigation Should Be Denied.**

Plaintiff initially asserts that Defendant Muthee committed two acts/omissions that constituted "spoliation" and deprived the Kansas Highway Patrol from conducting a complete investigation.    First, Plaintiff asserts that Muthee "fled the scene" of the accident. *See* PLAINTIFF'S MOTION FOR SANCTIONS p. 11-12; 21-23.    Second, Plaintiff asserts that Muthee's act in replacing the steer tires prevented the Kansas Highway Patrol from inspecting the vehicle in the same manner in which it inspected the vehicle operated by Billy Chick. *See* PLAINTIFF'S MOTION FOR SANCTIONS p. 11-12; 22-23.    This argument is grounded in the inference that Defendant Muthee realized the possibility that he negatively affected the accident scene caused by Jacob Valek.    Plaintiff took the deposition of George Muthee on April 12, 2010.    Muthee testified that he had no personal knowledge to either confirm or dispute whether his vehicle came in contact with Don Ashton on August 11, 2007.[30]    Muthee acknowledged that although he felt a jolt while he was driving the relevant portion of the roadway, he checked his mirrors and gauges and did not have an appreciation for striking any portion of the debris field, including the possibility of striking Don Ashton.[31]    Muthee further testified that it was pitch black along the relevant roadway; there is no evidence to support that Muthee observed a particular dangerous condition or significantly physically struck Don Ashton.[32]    Plaintiff, however, asserts this Court should assume that Muthee not only was aware of the scope of the debris field and Ashton's

---

[30]    *See* MUTHEE DEPOSITION, p. 26-27.

[31]    *See* MUTHEE DEPO, p. 119-122.

[32]    *See* MUTHEE DEPOSITION attached as a portion of the Appendix to DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS.

body in the roadway, but further assume that he intended to continue operating his vehicle away from the accident scene in an effort to materially destroy relevant evidence.

Plaintiff begins the necessary inference by asserting that "the fact that Billy and Deborah Chick saw the same wreckage and pulled over and stopped shows that a driver could see the debris field." *See* PLAINTIFF'S MOTION FOR SANCTIONS, p. 16. Regardless of the additional testimony and evidence from this case that actually indicates the difficulty associated with seeing the accident and the debris field, as well as ignoring Muthee's testimony regarding his reasons for continuing his travel towards Sparks, Nevada, Plaintiffs blindly assert Muthee's actions should be deemed as "fleeing the scene" in violation of statutes and regulations. [33] Plaintiff further asserts that "fleeing the scene" in 2007 was done intentionally to hide evidence of misconduct in participating with the police investigation, and then based on this assumption of knowledge, the assumption of bad faith, and assumption of prejudice, Plaintiff seeks sanctions in this litigation. This is not the standard this court should apply in exercising either its inherent authority or under Federal Rule of Evidence 37. [34]

Plaintiff's motion assumes that Muthee and Knight Transportation should have perceived at the time of traveling through the post-accident scene conditions that others would later opine fails to trigger even an inference that Muthee knowingly fled the scene of an accident. Significantly, there is absolutely no indication either in the motion, the evidence, or even reasonable inference to assume that evidence that was obtained later (albeit not on the night of the collision between Valek and Ashton) materially affected the police investigation as to the

---

*See* WILLIAM HELTON DEPOSITION attached as a portion of the Appendix to DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS; *See* BILLY CHICK STATEMENT attached as a portion of the Appendix to DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS

[34] *Condrey,* 431 F.3d at 203; *Whitt*, 529 E. F.3d at 283; *Vick*, 514 F.2d at 737.

cause of the accident.  As noted above, a spoliation of evidence sanction requires a finding of intentional destruction indicating a desire to suppress the truth <u>without the benefit of hindsight.</u>[35] Despite Plaintiff's efforts, mere innuendo simply does not justify sanctions or the drawing of an adverse inference. [36]  It is important to note that the burden of proof question differs depending on the severity of the sanctions sought.  Plaintiff is not seeking a fine based upon the conduct of Muthee as a "spoliating party," but instead is seeking severe sanctions such as dismissal, preclusion, or adverse inference instructions, all which hold a higher burden requiring proof:  (1) that the spoliating party had a control over the evidence and an obligation to preserve it at the time of destruction or loss; (2) that the spoliating party acted with a culpable frame of mind upon destroying or losing the evidence; and (3) that the missing evidence is relevant to the innocent party's claim or defense.[37]

Plaintiff asks this court to review the evidence through a reverse looking-glass by assuming Muthee not only knew but appreciated the effect of his travel through the post-accident scene.  These assumptions are both necessary not only for the "fleeing the scene" allegation of spoliation but also in regards to the changing of steer tires.  In the absence of the assumption that Muthee understood his role, if any, in altering the post-accident debris field, there is no trigger point for a duty to "preserve evidence."  It is only in a hindsight review that the potential relevance of the tires is revealed.  Of course, even if this court is to assume *arguendo* that Muthee should have either assumed a duty or otherwise infer that he should have presumed that

---

[35]     *Rimkus Consulting Group, Inc*., 688 F.Supp. 2d at 613; *see also Faas v. Sears Roebuck & Co*., 532 F.3d 633,  644 (7th Cir. 2008); *Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032, 1035 (8th Cir. 2007); *Stephenson v. Union Pacific Railroad Co*., 354 F.3d 739, 746 (8th Cir. 2004); *Aranburu v. Burlington,* 112 F.3d 1398,1407 (10th Cir. 1997).

[36]     *See Wyler v. Korean Airlines Co*., 928 F.2d 1167, 1174 (D.C. Cir. 1991).

[37]     Id.  (quoting *Pension Committee of Univ. of Montreal Pension Plan v. Banc of America Security, LLC*, 2010 U.S. District LEXIS 4546, at *17-23 (S.D.N.Y. Jan. 15, 2010)).

---

he committed a act that would later lead to litigation, his act in changing the steer tires fails to warrant the severe sanctions requested by Plaintiff. First, there was an innocuous reason to change the steer tires based upon the condition of such tires unrelated to the assumption that Muthee struck a body.[38] Plaintiff asserts that this Court should presume the changing of the tires was intended to result in the disposal of such tires by a third party vendor. Plaintiff further asks this Court to agree with a person involved in the accident, Will Helton, that his experience as a Firestone store manager for several years warrants the opinion that "a driver might want to change the steer tires so that the new tires' tread pattern wouldn't match the tread pattern on the road."[39] Again, this hindsight opinion by a friend of the decedent based upon his experience as a Firestone store manager openly guessing why a party may change his tires *if doing so for an improper reason only* certainly fails to support the burden of proof regarding Muthee's change of the steer tires. Plaintiff further argues that Muthee's conduct deprived Ashton and the authorities of relevant evidence because his departure from the scene prevented the Kansas Highway Patrol from examining his tractor/trailer for evidence related to hitting Don Ashton. *Not only is this allegation unfounded and ignores the burden of proof associated with a finding of spoliation, but further ignores that the fact finder will not be asked to determine whether Muthee struck the body of Don Ashton, but rather be asked to determine whether the act of striking Don Ashton resulted in the alleged damages.*

---

[38]    *See* MUTHEE DEPOSITION attached as a portion of the Appendix to DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS; *see* SANT DEPOSITION attached as a portion of the Appendix to DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS

[39]    *See* PLAINTIFFS' MOTION FOR SANCTIONS, p. 22; HELTON'S DEPO, p. 178-80.

**B.** **Plaintiff's Request for Sanctions Based upon the Inspection of Robert Steve McKinzie and Testing of Ryan Rezzell Should Be Denied.**

There is no dispute that Knight Transportation hired Robert Steve McKinzie to examine the vehicle operated by Muthee on August 25, 2007. Plaintiffs' Motion for Sanctions asserts that McKinzie's inspection of the Knight Transportation vehicle constituted tampering with the evidence of a possible crime, and further that the Court should assume that McKinzie acted in bad faith in investigating without the presence of a Kansas Highway Patrol trooper on August 25, 2007. *See* PLAINTIFFS' MOTION FOR SANCTIONS, p. 24-25. Although Plaintiff relies upon electronic communications exchanged between Kansas Trooper Kip Ballinger and other individuals as forming the backdrop of some type of obstruction allegation, Trooper Ballinger testified much more leniently and contrary to these broad accusations at the time of his deposition.[40]

It is apparently necessary to clarify the acts of Knight Transportation and its Kansas counsel in the months following the incident in question. Plaintiff asserts that all acts by Knight Transportation, McKinzie, or Lee Baty, constituted a direct and intentional effort to thwart the Kansas Highway Patrol in investigating the death of Don Ashton. *See* PLAINTIFFS' MOTION FOR SANCTIONS, p. 25-26. The evidence is to the contrary. Knight Transportation made the equipment available to the Kansas Highway Patrol, offered to assist with the costs associated with the necessary travel, provided documentation to the Kansas Highway Patrol directly, provided additional documentation to the Federal Motor Carrier Safety Administration directly, and was in direct communication with Trooper Ballinger regarding the inspection of the

---

[40]    *See* BALLINGER DEPOSITION attached as a portion of the Appendix to DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS

equipment by McKinzie.[41]  But more important in the context of Plaintiff's request for sanctions, *Plaintiff fails to carry her burden of demonstrating how any specific act destroyed material evidence through a bad faith act.*

Plaintiff makes complaint of the ultimate findings of the laboratory that conducted testing on the scraped samples, but is forced to concede that the results of such sampling was provided to her during the course of discovery in this cause.  She also fails to establish why such testing has materially affected her ability to carry her evidentiary burdens at the time of trial.  Plaintiff's Motion for Sanctions for the inspection of the equipment and testing of samples of material from the equipment should be denied.

## IV.   PLAINTIFF'S REQUEST FOR SANCTIONS ON GROUNDS OF "DISCOVERY MISCONDUCT" IGNORES THE DISCOVERY PROCESS IN THIS CAUSE

Perhaps tacitly recognizing that the alleged acts or omissions by Knight Transportation and Muthee in dealing with the Kansas Highway Patrol occurred prior to litigation, on the eve of the original pre-trial hearing, Plaintiff filed this Motion for Sanctions not only for a spoliation sanction but also to complain of what she believed to be an abuse of the discovery process during the course of litigation.  Plaintiff's motion generally refers to "other discovery misconduct" relating to the timing of the production of documents and responses to discovery in an apparently effort to bolster support of the drastic sanctions requested.  *See* PLAINTIFF'S MOTION FOR SANCTIONS, p. 9-15.  Defendants respectfully request that the Court separate the alleged acts and assumed harm as to the previously discussed matters from the alleged "discovery abuse" in the timing of production. Significantly, the purpose of imposing sanctions for discovery acts target three areas: (1) to secure compliance with the Rules of Discovery; (2) deter others from violating

---

[41]   *See* BALLINGER DEPOSITION attached as a portion of the Appendix to DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS; *See* SANT DEPOSITION attached as a portion of the Appendix to DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS.

them; and (3) to punish those who do violate them.[42]  This portion of Plaintiff's motion seeks

discovery not for failure to respond to discovery under FEDERAL RULE OF CIVIL PROCEDURE 37,

but instead as a complaint of the manner in which Plaintiff obtained this information within the

discovery period, and then seeks severe sanctions such as striking pleadings, striking defenses,

and establishing as a proven fact that Muthee was responsible for the death of Don Ashton.

Whether to impose post-discovery sanctions is a matter within the Court's discretion.[43]

In making the decision of whether to impose sanctions under Rule 37, any contemplated sanction

must be just and must relate to the claim to which the discovery order was addressed.[44]  Plaintiff

served her first Request for Production on July 16, 2009.  Included in those Requests was the

following:

> **REQUEST FOR PRODUCTION NO. 10:**
> Please produce a copy of all documents that relate to any communications between Knight Transportation or George Muthee on the one hand and a motor carrier safety service center, on the other hand, between August 10-27, 2007, that relates to George Muthee or the truck that he was driving on August 11, 2007.  "Motor carrier safety service center" has the same meaning here as in 49 C.F.R. Section 390.27.
>
> **RESPONSE**:  **Defendant objects to Request No. 10 as overly broad, burdensome, and inherently vague in that it fails to define the specific nature of the request. Defendant further objects that said request seeks documents irrelevant to the claims made the basis of this lawsuit and exceeding the scope of permissible discovery. Defendant further objects that said Request is not properly limited in time and scope.  *See Federal Rules of Civil Procedure 26(b)(1) and 26(b)(2)(c).*  Subject to said objections, please see the documents attached hereto.**

Defendants attached communication documents between Knight and the Truck for Aug 13th thru

17th.  The documents were produced by agreement of the parties on September 1, 2009.  During

---

[42]     *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976).

[43]     *See, e.g. Gomez v. Martin Marrietta Corp.*, 50 F.3d 1511, 1519 (10th Cir. 1995) (Court declined to impose sanctions against party who destroyed evidence subject to discovery when evidence with summary of evidence already produced and party requesting sanctions was not prejudice).

[44]     *Insurance Corp. of Ireland, LTD. v. Compagnie des Bauxites*, 456 U.S. 694, 707 (1982).

the corporate representative deposition <u>on June 8, 2010</u>, it was determined that Knight Transportation should have documents for the additional dates. By way of correspondence on <u>June 9, 2010,</u> Plaintiff requested these additional documents, *but for the first time*, included the dates of Aug 8 and 9th, 2007. Based upon the discovery of additional mechanisms by which to locate these documents, Knight Transportation was able to have technology assistants recreate such materials, and they were produced through Knights 2nd Supplemental Answers to Plaintiff's First Requests for Production on <u>July 1, 2010</u> (almost 90 days before the last trial setting). The form of the recreated documents is essentially an Excel Spreadsheet as opposed to "Screen Shots" that were available earlier in the litigation. There is no doubt they are more difficult to read, *but they contain the same data*.

On June 24, 2010, Plaintiff sent an e-mail asking for a conference on Plaintiff's Request for Production Number 10. Subsequent to Plaintiff's request, the documents he sought were produced on July 1, 2010, six (6) days later. Defendants agree that Plaintiff also made the following Request:

> **REQUEST FOR PRODUCTION NO. 47:**
>
> Please produce a copy of the paper or electronic data, including that from QUALCOMM, that tracked or otherwise showed the location of (a) George Muthee or (b) the truck he drove on August 10-14, 2007.
>
> **RESPONSE**: **Defendant objects to Request No. 47 as overly broad, burdensome, and inherently vague in that it fails to define the specific nature of the request. Defendant further objects that said request seeks documents irrelevant to the claims made the basis of this lawsuit and exceeding the scope of permissible discovery. Defendant further objects that said Request is not properly limited in time and scope. *See Federal Rules of Civil Procedure 26(b)(1) and 26(b)(2)(c).* Subject to said objections, please see the location data documents and QUALCOMM information attached hereto.**

Of initial importance, there is no dispute that Knight Transportation timely produced GPS info for Aug 10 -15, 2007 as requested; indeed, Knight produced August 10-18th, 2007 in response to

the above request. On June 7, 2010, the evening before the corporate representative deposition it was discovered that the corporate representative might be able to recreate Muthee's driving history through a backtracked review of the driver violation inquiry system on Knight's drivers. Using his laptop, the corporate representative logged into the Knight system and pulled Muthee's history, and for the first time, creating documents that now needed to be provided to Plaintiff as a formal supplementation.  Defendants did so immediately that same evening. Using the information provided, Plaintiff was given the opportunity to question the representative regarding the violation history, and indeed did so.[45] During this questioning, Plaintiff elicited testimony that indicated that Muthee had prior violations outside the initial requests and production. Plaintiff certainly in good faith cannot now argue to this Court that the sanctions requested (striking pleadings, striking defenses, deeming facts) are warranted based upon the timing or manner of these materials.

Defendants do not dispute that on December 3, 2009, a Joint Status order was filed after Plaintiff moved to compel various documents. Although the prior issues were addressed, the backtracked documents provided after discussions in preparation for deposition on June 7, 2010, necessitated the supplementation that occurred literally hours within counsel learning about the additional documents, and the corporate representative logging into the system in an attempt to discover information earlier than August 10, 2007.  By Plaintiff's own admissions in her Motion, these documents were indeed produced more than ninety days prior to the original trial date, and Plaintiff was afforded the opportunity to question the corporate representative regarding same.[46]

---

[45]   *See* SANT DEPOSITION attached as a portion of the Appendix to DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS

[46]   *See* SANT DEPOSITION attached as a portion of the Appendix to DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS.

## V.    PLAINTIFF'S PROPOSED "REMEDIES" ARE INAPPROPRIATE

Defendants acknowledge that allegations of spoliation, including the destruction of evidence in pending or reasonably foreseeable litigation, may be addressed in federal courts through the inherent power to regulate the litigation process if the conduct occurs before a case is filed or if, for another reason, there is no statute or rule that adequately addresses the conduct.[47] The test to be applied relies upon the discretion of the trial court in assessing whether there is a need to remedy "damage done by a [party's] malfeasance" that cannot be remedied through any other means.[48]    When inherent power does apply, it is "interpreted narrowly, and its reach is limited by its ultimate source--the court's need to orderly and expeditiously perform its duties."[49] "A court may * * * assume facts against a party that destroys or loses evidence subject to a preservation obligation."[50] Under the doctrine of spoliation, a jury may draw an adverse inference "that a party who intentionally destroys important evidence in bad faith did so because the contents of those documents were unfavorable to that party."[51] These remedies are only appropriate for consideration <u>after</u> Plaintiff has carried her burden of establishing all elements of

---

[47]    *Condrey v. SunTrust Bank of Ga.*, 431 F.3d 191, 203 (5th Cir. 2005); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-46, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991); *Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1408 (5th Cir. 1993) (summary calendar).

[48]    *See Klein v. Stahl GMBH & Co. Maschinefabrik*, 185 F.3d 98, 109 (3d Cir. 1999)

[49]    *Newby v. Enron Corp.*, 302 F.3d 295, 302 (5th Cir. 2002) (citing *Chambers*, 501 U.S. at 43); *Rimkus Consulting Group, Inc.*, 688 F. Supp. 2d 598.

[50]    *Id.* (citing *FDIC v. Hurwitz*, 384 F. Supp. 2d 1039, 1099 (S.D. Tex. 2005)).

[51]    *Whitt v. Stephens County*, 529 F.3d 278, 284-85 (5th Cir. 2008), *quoting and citing Russell v. Univ. of Texas*, 234 Fed. Appx. 195, 207 (5th Cir. 2007); *Vick v. Texas Employment Commission*, 514 F.2d 734, 737 (5th Cir. 1975) ("The adverse inference to be drawn from the destruction of records is predicated on bad conduct of the defendant * * *. The circumstances of the act must manifest bad faith."); *in accord, Wal-Mart Stores, Inc. v. Johnson*, 106 S.W.3d 718, 721 (Tex. 2003) ("a party who has deliberately destroyed evidence is presumed to have done so because the evidence was unfavorable to its case").

---

the spoliation doctrine.

Significant to the case at hand, the relief requested by Plaintiff overshoots the appropriate remedies or otherwise *asks this Court to assign weight to evidence that Defendants do not intend to dispute at trial.* Defendants accept that the general rule indicates that if a party intentionally destroys evidence, the trial court may exercise its discretion to impose sanctions on the responsible party. The seriousness of the sanctions that a court may impose depends on the consideration of: (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by other in the future.[52] Defendants dispute that the elements of spoliation are attained in light of the evidence and authority discussed throughout this briefing, but in large part protests the machinations forcing this issue towards a ruling that is wholly unnecessary in this case.

Specifically, Plaintiff asks this court to rule that the following facts are established: (1) Muthee hit Don Ashton, and (2) Muthee hit and killed Don Ashton. The first fact has already been conceded by Defendants in this cause as it relates as to whether the Knight Transportation vehicle operated by Muthee struck Don Ashton after the collision between Valek and the Ashton Hummer. The second "fact" pursued is wholly unfounded since the evidence in question goes merely towards establishing whether there was contact between the Knight Transportation vehicle and Don Ashton and not to medical causation. Should the court rule that all of the assumptions requested by Plaintiff should be applied across the board to all post-accident behavior by either Muthee or Knight Transportation, there are still no grounds for the death penalty sanction of a follow-up assumption that Muthee, not Valek, was the source of the

---

[52]      *Schmidt v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 78 (3d Cir. 1994).

damages associated with the death of Don Ashton.  Again, irrespective of the source of the authority in both, courts are not supposed to impose a significant sanction for spoliation of evidence that is not commensurate with a specific showing that the destruction prejudiced the opposing party.  To the contrary, courts should impose the most lenient sanction that still offers an adequate remedy. [53]   To the extent that Plaintiff is requesting certain facts be deemed established, should facts should be limited to those that can be causally connected to the alleged improper bad faith act.[54]  Furthermore, even under the authority afforded this Court under Rule 37, any sanction must be just and directly connected to the alleged improper conduct.[55] The heavy-handed requests by Plaintiff fail to meet the standards of justice, particularly when separated from the investigation by the Kansas Highway Patrol **or any demonstration of prejudice.**

Alternatively, the Plaintiff requests the court given an adverse inference instruction to the jury.  Again, mere negligence in losing or destroying evidence or records is not sufficient to support an inference of consciousness of a weak case, nor does it support an inference of adverse information.[56]  An inference cannot be drawn merely from negligent loss of even destruction of evidence without a showing that willful conduct resulted in the loss or destruction of evidence that was material to an issue left to the fact finder.[57]  The decision to implement an adverse

---

[53]     *Pension Plan*, 2010 U.S. Distinct LEXIS 4546 at *25.

[54]     *See Chilcutt v. United States*, 4 F.3d 1-13, 1324 and N.23 (5th Cir. 1993).

[55]     *Insurance Corp. of Ireland, LTD. v. Compagnie des Bauxites*, 456 U.S. 694, 707

[56]     *See, e.g., Turner v. Public Service Co. of Colorado*, 563 F.3d 1136, 1149 (5th Cir. 2009); *Faas*, 532 F.3d at 644.

[57]     *See, e.g. Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 450 (4th Cir. 2004); *Allen Penn Co. v. Springfield Photo Mount Co.*, 653 F.3d 17, 23-24 (1st Cir. 1981).

inference instruction is designed to level the evidentiary playing field.[58]  Adverse inferences, exclusion of spoiled evidence, and dismissals of an entire case are considered drastic sanctions that a court should generally try to avoid.[59]  It is uncontroverted that the alleged "spoliation" occurred years prior to this litigation.  In an effort to ignore the obvious fact that there is no court order that has been violated, no motion to compel required, and no presumed "bad act" since the filing of this lawsuit, Plaintiffs' couch their allegations in a manner to insert that the Kansas Highway Patrol was somehow deprived of an opportunity to conduct a meaningful investigation.  This assertion ignores the evidence, including that from Trooper Ballinger himself.

**PRAYER**

Defendants' respectfully request that the Court deny Plaintiffs' Motion for Sanctions for the Spoliation of Evidence on all grounds, or alternatively, to properly tailor any sanctions in order to be just, and further seeks such other and further relief to which they may be justly entitled, in law or in equity.

---

[58]    *Russell v. Univ. of Texas at Permian Basin*, 234 F. Appx. 195, 207 (5th Cir. 2007) (unpublished); *see also Vick*, 514 F.2d 734.

[59]    *TandyCrafts, Inc. v. Bublitz*, 2002 U.S. District LEXIS 3353 (N.D. TX Feb. 27, 2002).

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS**
**AND BRIEF IN SUPPORT**

Respectfully submitted,



**MICHAEL P. SHARP**
State Bar No. 00788857
**DANIEL M. KARP**
State Bar No. 24012937
**REBECCA E. BELL**
State Bar No. 24026795
**FEE, SMITH, SHARP & VITULLO, L.L.P**
Three Galleria Tower
13155 Noel Road, Suite 1000
Dallas, Texas  75240
(972) 934-9100 (Telephone)
(972) 934-9200 (Facsimile)

**ATTORNEYS FOR DEFENDANTS
KNIGHT TRANSPORATION, INC.
AND GEORGE M. MUTHEE**

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of October, 2010, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court.  The electronic filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

Michael F. Pezzulli
Christopher L. Barnes
Jack B. Krona
Pezulli Barnes, L.L.P.
17300 Preston Road, Suite 220
Dallas, Texas 75252

_Rebecca E Bell_

**REBECCA E. BELL**